# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHRISTOPHER ALSOP, *

Petitioner *

v * Civil Action No. PWG-19-971

WARDEN T. S. STEWART, *

Respondent *

\*\*\*

## MEMORANDUM OPINION

Petitioner Christopher Alsop, an inmate currently confined at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), acting without counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the validity of the results of a disciplinary hearing arising from conduct during his confinement at the LSCI-Allenwood. ECF No. 1. Respondent, the Warden of FCI-Cumberland, moves to dismiss or for summary judgment. ECF No. 9. Alsop has responded (ECF Nos. 11, 14, 15) and also filed a "Motion for Expedition Ruling" (ECF No. 18), which will be denied as moot. Respondent has replied. ECF No. 13. Because Alsop cannot prove a violation of his Constitutional rights based on the undisputed material facts, Respondent's motion, construed as a motion for summary judgment, shall be granted; and the Petition shall be denied and dismissed.

### Background

Alsop is serving a 30-year sentence, to be followed by 10 years of supervision. Cerny Decl., ECF No. 9-2, ¶ 7. On July 12, 2018, while housed at LSCI-Allenwood, Alsop was charged with a Code 113 violation, "Possession of Any Narcotics, Marijuana, Drug, Alcohol, Intoxicants or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff." ECF No. 1-1, p. 1.

At the time of the incident, Alsop was housed in a cell with two other inmates, J. Burke and Mark Lawrence. ECF No. 1, p. 2. Their room had three lockers and three footlockers. *Id.* Alsop states that on July 11, 2018, after 6:00 p.m. he was called to the unit office. *Id.* at 2. He was working on a legal case and left his legal documents and two personal letters on his bed. *Id.* When he reported to the unit office, he was placed in the special housing unit overnight for a medical trip the following morning. *Id.* He returned to LCSI-Allenwood on July 12, 2018. *Id.* While he was out, Alsop's roommate, Mark Lawrence, placed Alsop's personal items in Lawrence's locker to avoid disciplinary actions for failing to keep their area neat. *Id.* at 4; ECF No. 1-1, p. 12; ECF No. 11-3, p. 2 (Lawrence Affidavit dated 1/20/2019). Alsop alleges that Lawrence testified at the disciplinary hearing that the medication was prescribed to him, found in his locker, and that Alsop's papers were in Lawrence's locker. ECF No. 1, p. 3,4.

On July 12, 2018, at approximately 9:00 a.m., Kevin Vincenzes searched Alsop's cell. ECF No. 1-1, pp. 1, 4. During the search, Vincenzes found, in a locker and footlocker, several unauthorized items including: homemade dumbbells, homemade locker organizer, pornographic photographs, unauthorized pillows, a water cooler with milk, "Allupurinol 100 mg tablets in an improperly labeled medication bottle without an inmate name on the label" and "Indomethacin 50 mg. capsules in an improperly labeled medication bottle without an inmate name on the label." *Id.* at 1. Vincenzes determined that the locker containing the medications belonged to Alsop because Alsop's personal items including mail and legal documents with his name and registration number on them were found in the locker. *Id.* Vincenzes also determined that the prescription drugs found in the locker were not prescribed to Alsop by medical staff. *Id.*; *see also* ECF No. 1-1, p. 21. Accordingly, Alsop was charged with a Code 113 violation "Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual

2

by the medical staff" and a Code 305 violation for "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." ECF No. 1-1, p. 2.

Alsop was given the incident report the following day. *Id.* at 1. On July 13, 2018, the Unit Discipline Committee (UDC) reviewed the charges. *Id.* Alsop refused to make a statement and displayed a poor attitude. *Id.*; ECF No. 9-6. In light of the seriousness of the charges, the UDC referred the matter to a Disciplinary Hearing Officer (DHO). ECF No. 1-1, p. 1. Alsop was advised of his rights before the DHO. *Id.* at 2.

A hearing was held before DHO Todd W. Cerney on August 8, 2018. Alsop was again advised of his rights and afforded the opportunity to defend himself. *Id.* At the hearing, Alsop waived his right to have a staff representative. *Id.* Alsop testified that he did not have a lock for his foot locker and knew it was not locked.[1] *Id.* He accused Vincenzes of lying that the medications were in his locker and claimed he was set up by medical staff. *Id.* Alsop also submitted a written statement in his defense, wherein he suggested that one of his cellmates may have left their medication on top of a locker in the cell. *Id.* Alsop also complained that the incident report did not reflect whether any of the other lockers were searched or explain where the medication or other contraband was found. *Id.*

Both of Alsop's cellmates testified during the hearing. ECF No. 1-1, p. 3; ECF No. 9-2, ¶ 10. Lawrence testified to Alsop's good character. He also testified that while he never locked his locker, his two cellmates did. *Id.* Lawrence also testified that the medications found belonged to him and that he found the label for the gout medication stuck to a deck of cards in his locker but

---

[1] Contradicting this statement, in his opposition response, Alsop states that "When Alsop is present in the unit he don't lock his locker but when he leaves the unit for work and gone for 3 hour[s] Alsop do[es] lock his locker. . ." ECF No. 11, p. 6. Alsop claims that since he was present in the unit on July 11, 2018, his locker was not locked. *Id.* He speculates that Burke or the unit officer could have locked his locker. *Id.*

3

did not know how it got there. ECF No. 1-1, p. 3. Contrary to Alsop's assertion, there is no evidence that Lawrence testified before the DHO hearing that he placed Alsop's mail and legal materials in his, Lawrence's locker, and/or that the items were found in Lawrence's locker. *Id.* Burke testified that none of his lockers were locked and he did not believe Alsop locked his locker all the time. *Id.*

Additional evidence considered by the DHO included: Alsop's written statement, the medication summary for Alsop, which showed the medications found in the cell were not prescribed to him (ECF No. 1-1, p. 21), email correspondence dated July 12, 2018 from a pharmacist explaining the use of the medications (ECF No. 1-1, p. 20), and photographs of the seized medication (ECF No. 1-1, p. 22). ECF No. 1-1, pp. 3-4; ECF No. 9-2, ¶ 10.

The DHO did not find Alsop's claim that he was being set up credible. ECF No. 1-1, p. 4. The DHO further found that Vincenzes did not have anything personally to gain by falsifying the details of the search. *Id.* Additionally, while Alsop claimed that it was possible the medication was found on top of a locker, Vincenzes stated in the incident report that the items were found in a locked locker he personally searched and which contained mail and legal documents bearing Alsop's name. *Id.* The DHO also found that Lawrence's statement that the discovered medications were "'his' only solidified the fact Alsop should not have been in possession." *Id.* In regard to Burke's testimony, the DHO found that Burke's belief that Alsop only sometimes locked his locker neither hindered or aided Alsop's defense. *Id.*

The DHO found that Alsop's possession, in his locked locker, of prescription medications not prescribed to him supported the charged act of Code 113. *Id.* The lesser charge was expunged as the DHO was not convinced all of the items listed would fit in the locked locker. *Id.* The DHO considered the evidence and found that the "greater weight of evidence" supported a finding that

4

Alsop committed the prohibited act of possessing drugs not prescribed to him and avers that his decision was based solely on the evidence presented at the hearing. ECF No. 1-1, p. 4; ECF No. 9-2, ¶¶ 10, 12. The DHO sanctioned Alsop with 30 days of disciplinary segregation and the loss of 40 days of good time credits. ECF NO. 1-1, p. 4.

Alsop seeks restoration of the good time credits and expungement of his record. ECF No. 1, p. 5. Alsop claims that the DHO's decision was based on insufficient evidence because the record is "devoid of evidence that the findings of the disciplinary board were without support." ECF No. 1, ¶ 32. Alsop claims that the DHO relied on "photographic evidence that only showed a picture of [his] roommate Mark Lawrence's gout medication" and "an email which only described what kind of medication [he] took." ECF No. 1, ¶ 23. The crux of Alsop's claim is that the evidence was insufficient to demonstrate that he was in possession of his cellmate's prescribed medication. He asserts that "there is no dispute some of [his] personal items [were] found inside of a locker with his roommate's prescribed medication" (ECF No. 1-2, p. 2) but contends, based upon the affidavit of Lawrence, executed six months after the DHO hearing, that Lawrence put Alsop's personal items in his locker to avoid disciplinary violation.

**Standard of Review**

Respondent filed its motion as a Motion to Dismiss, or in the alternative, for summary judgment, and submitted evidence for the Court's review; Alsop has not requested an opportunity for discovery; and I will consider the evidence in my analysis. Accordingly, the motion is construed properly as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013); *Ridgell v. Astrue*, No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* The Court considers the undisputed facts, in the light most favorable to Petitioner.

## Analysis

Prisoners retain rights under the Fourteenth Amendment's Due Process Clause, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is

not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 570-71, 578-79. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See id; Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5.

Alsop does not allege that he did not receive all the procedural process that was due. The record reflects that he received advance written notice of the charges against him, was able to present witnesses and evidence at his hearing, was offered but declined representation, was provided a written statement of the evidence, and was granted an impartial decision maker. He also was present at the hearing and testified. After the hearing, he received the DHO's written decision.

As to Alsop's substantive due process claim, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. *See Hill*, 472 U.S. at 455-456.

Alsop's effort to present new evidence (the affidavit of Lawrence) and new theories of what constitutes possession are unavailing. The DHO decision was based upon the evidence presented at the time of the disciplinary hearing. The record evidence demonstrates that the DHO weighed the testimony and evidence offered by Alsop against evidence presented by prison staff and found that Alsop possessed the medication as alleged. The DHO issued a written decision that provided an evidentiary basis for the ruling. Further, there is no evidence that the DHO was not impartial. The DHO's decision was supported by "some evidence" which is all that is constitutionally required. *See Hill*, 472 U.S. at 455-56; *Wolff*, 418 U.S. at 564-66, 570-71, 578-79.

**Conclusion**

Respondent is entitled to summary judgment in his favor. A separate Order follows.

_February 6, 2020_
Date

Paul W. Grimm
United States District Judge